## DAMAGES FOR ASSAULT AND BATTERY.

[Circuit Court of Wood County.]

MICHAEL HENNING v. JOHN J. BARTZ.

Decided, April Term, 1903.

*Assault and Battery—Testimony in Civil Actions as to Reputation—*
*Damages so Small as to Warrant a Reversal—Affidavits on Motion*
*for New Trial.*

1. A reviewing court can not take notice of affidavits offered on a motion for a new trial, unless they are incorporated in a bill of exceptions.

2. In an action for damages for assault and battery, where the defense of self-defense is set up, testimony as to the general reputation and character of the plaintiff as a fighting and quarrelsome man, and of specific instances of assault is competent, if such reputation or instances have come to the knowledge of the defendant.

3. A judgment which is so small as to be clearly contrary to the weight of the evidence, considering the injury sustained, may be reversed on that ground.

HULL, J.; PARKER, J., and HAYNES, J., concur.

Error to the Court of Common Pleas of Wood County.

This action was brought in the court of common pleas by Michael Henning, plaintiff in error, against John J. Bartz, to recover damages for an assault and battery which he claims was made upon him by the defendant. The parties stand here the same as in the court below, plaintiff and defendant. The plaintiff asked for damages in his petition in the sum of five thousand dollars.

The defendant in his answer sets up that the plaintiff assaulted and struck him, and that what he did, he did in self-defense. The case was tried and a verdict returned in favor of the plaintiff for the sum of one dollar, and the plaintiff prosecutes error to reverse the judgment which was entered upon that verdict, claiming, that although the verdict was in his favor, that it was in an amount so small as to be contrary to the weight of the evidence and contrary to law. One of the claims made by the plaintiff is that he was prejudiced by the absence of a witness upon the trial of the case,

and this was made one of the grounds for a new trial in the court of common pleas upon the motion, and affidavits were filed. It was stated in the argument that this witness had been subpoenaed and that he had promised to be present, and that the affidavits showed that his testimony was material. It was also stated that upon the trial of the case, counsel for the plaintiff stated to the trial judge that this witness had been subpoenaed and that plaintiff expected him to be present; he did not appear, but no application was made for a continuance of the case nor for a postponement at any time during the trial of the action on this account. It is claimed that the testimony of the witness was important; and it is argued that the court of common pleas should have granted a new trial for that reason. The bill of exceptions, however, does not disclose any of these facts as occurring, either upon the trial of the case or after the trial upon the motion for a new trial; the affidavits are not attached to the bill of exceptions, and no bill of exceptions was made upon the action of the court in overruling the motion for a new trial upon this ground.

A reviewing court can not take notice of affidavits offered on a motion for a new trial, unless they are incorporated in a bill of exceptions. There is no certificate of the court below here that these affidavits were the evidence offered upon the motion for a new trial—no certificate that this was all the evidence offered upon the motion; therefore that question is not properly before us. It may be said, however, in passing, that it is conceded in argument that the testimony of this witness Henry, would be cumulative only; his testimony being of a character similar to that of the plaintiff below, he claiming that Henry was present at the time of the occurrence.

One of the chief claims of error is the admission of certain testimony on the trial of the case bearing upon the character of the plaintiff and his disposition, and upon the knowledge that the defendant had of that at the time of the alleged assault, that is, bearing upon the character of the plaintiff as to being a fighting man or of a quarrelsome disposition. The record shows that these men met upon the morning of the day in question and had a struggle, and each one claimed the other struck the first blow; the

defendant claiming that the plaintiff struck first, and that what he did was in self-defense.

The defendant claims that they met at or near a livery stable, and had some words in regard to a small bill which the defendant had against plaintiff for work; the plaintiff refused to pay it and charged him with stealing sand, and claims that thereupon, after some words, the plaintiff struck him and attacked him, and that to protect himself, he being a shorter man than the plaintiff, he clinched him, and being unable to use his hands as he claimed, he butted him, and that they finally fell, the defendant falling on top of the plaintiff. The testimony is somewhat conflicting as to what occurred after they fell; the plaintiff claiming defendant struck him several times after he fell, and the defendant being uncertain as to how many times he struck him; the defendant claiming all the time that what he did, he did in self-defense. He said he was afraid of the plaintiff and was afraid that he would injure him, and when he was asked why he was afraid of him, he answered because he had "licked so many men." This testimony was objected to as incompetent—his statement that he was afraid of the plaintiff because he had "licked so many men." Prior to that a witness had been called and asked as to the reputation of the plaintiff for being a fighting, quarrelsome man. An objection to the question was sustained by the court, and an offer was made to prove that he was of a quarrelsome, fighting disposition. After that a witness by the name of Knoke was called and testified as shown by the record on page 41 that he saw plaintiff hit a man by name of Slaughterback and also some other man. Objection was made to that, and the question was asked: "What do you know of his fighting, if anything?" Objection was made, overruled and exception taken, and he answered "I saw him hit Sam Slaughterback." Then he was asked another question: "Who else have you seen him hit, if anyone?" And he gave the name of the other man.

No objection was made to that question and no exception taken. The testimony of the defendant and perhaps of the plaintiff tended to show that the defendant, Bartz, had knowledge of the fact that Henning had fought, or struck, or whipped Slaughterback. After the fight, it was testified that Bartz said, "I'll have

you to understand that' I am no Slaughterback," and some other remarks were made showing he had knowledge of plaintiff having had trouble with Slaughterback, so that these objections raise the question as to whether in an action of this kind it is competent to show the character and disposition of the plaintiff—competent to show that the plaintiff had assaulted and whipped other men, and that the defendant, at the time of the fight or the assault, had knowledge of this.

It is claimed by the plaintiff in error that the general character of the parties in a civil action is not in issue, and that it is not competent to show what the character or reputation of the parties is. In a case of assault and battery it is claimed that the character of the plaintiff for peaceableness or otherwise is not in issue, and this is the general rule in civil actions; but there is in this case the element of self-defense, the defendant claiming that he acted in self-defense, and claiming that under the circumstances, in view of the character of the plaintiff, and in view of his knowledge of his character, he had a right to do what he did, and had good reason to suppose that he was, at the time, in danger. It is true that the plaintiff in this case denies that he assaulted the defendant, but if the testimony is competent upon the claim of the defendant that what he did, he did in self-defense, then it was properly admitted. There seems to be no doubt that in a criminal case testimony of this kind is competent where the defense is self-defense; the state of mind of the defendant being one of the things to be considered, on the question as to whether he believed, and had good reason to believe, that he was in danger; and the Supreme Court has said in the 26th Ohio St., in the case of *Marts* v. *The State of Ohio*:

"On the trial of an indictment for murder, the prisoner may, for the purpose of showing that the homicide was justifiable on the ground of self-defense, prove that the deceased was a person of violent, vicious and dangerous character, and that that character was known to the prisoner at the time of the recontre between them.

"Homicide is justifiable on the ground of self-defense, where the slayer in the careful and proper use of his faculties, *bona fide believes,* and has reasonable ground to believe, that he is in immident danger of death or great bodily harm, and that his only means

of escape from such danger will be by taking the life of his assailant, although in fact he is mistaken as to the existence or imminence of the danger."

That was an indictment for murder, but the same principle applies here. This question is discussed in the opinion in the above case and it is laid down there as the law that in a case where self-defense is claimed, the general character of an alleged assailant may be shown, and his general reputation, upon the theory that if he had the reputation of being a dangerous man, it probably had come to the knowledge of the defendant.

If you may show what the general reputation and character of an alleged assailant is, we think it is also competent and proper to show specific cases of assault—specific instances which have evinced the character of the party and which have come to the knowledge of the defendant; and the rule in a criminal case, should, we think, be the rule in civil cases; and it has been held in a case reported in the 43d N. W. Reporter, page 368, that in a civil case testimony of this kind is competent. The case is *Cully v. Welkeen,* decided by the Supreme Court of Michigan (80 Mich., 443). In the syllabus the court say:

"The defendant testified that he knew plaintiff to be a powerful and dangerous man, and that he was afraid of him, and that he had previously seen a fight between him and a policeman, in which the plaintiff was the aggressor. *Held:* That the testimony of the policeman as to what occurred on that occasion was competent.

"3. In an action for assault and battery, evidence as to the quarrelsome character of the plaintiff is inadmissible unless such fact was known to the defendant before the assault."

And in the opinion, the court say:

"The defendant gave testimony in his own behalf, and testified that he knew the plaintiff; that he was a powerful man and quarrelsome; that he had seen a fight between plaintiff and a policeman on another occasion and he detailed what he saw when the policeman tried to arrest him, and that he stood in fear of him; that plaintiff was the aggressor, and what he did was simply in self-defense."

This was ruled out by the trial court and this the Supreme Court of Michigan held to be error. They say on page 369:

"The court excluded the testimony. It should have been admitted for the purpose of showing to the jury the disposition and strength of the man. It would have some tendency to show whether his conduct on that occasion was calculated to inspire terror in the mind of the defendant, and to stand in fear of him as a dangerous man."

In the 5th C. C. Repts., at page 538, is a case that bears somewhat on this subject—*Turner* v. *The State of Ohio*—where the Circuit Court of Hamilton County held that evidence of a former assault that came to the knowledge of the defendant in a criminal case, was competent. They say in the syllabus:

"The evidence was competent and should have been received. If not strictly a part of the *res gestae* (which it probably was), it was admissible to show that the deceased had a knife shortly before his death, and also as tending to show the character of the deceased as a vicious and dangerous man, and that the defendant knew this."

It seems to be clear from the authorities that testimony of this kind tending to show the character of the plaintiff in such a case, if it came to the knowledge of the defendant, is competent; and it must be competent, for it will appear upon a moment's consideration that if this man was assaulted as he claims he was, he would take into consideration the character of the man who assaulted him in considering whether he was in danger or not, and the amount and force he should use in defending himself; and there is evidence in this record tending to show that Bartz had knowledge of the character that he claimed the plaintiff had. He testified that he was afraid of him because he had whipped so many men, and he had heard of it, and other testimony tended to show that he had heard of this assault upon Slaughterback.

We are not entirely clear that testimony as to the character of the party in a civil action for assault where it had not come to the knowledge of the defendant is competent, but it is not necessary to decide that in this case. The Supreme Court of the United States, however, and this court in following that court and others, have held that in a murder case, where threats of violence were made against the defendant by the deceased and where the de-

fense was self-defense, that testimony as to such threats was competent although the threats had not been communicated to the defendant, upon the ground, as put by the Supreme Court of the United States, that the defendant had a right to have the jury know the feeling which the deceased had towards him as bearing upon the question whether or not the deceased made the attack upon the defendant in the manner he claimed he did. This kind of testimony the Supreme Court of the United States say is admissible in a homicide case where the defense is self-defense.

We therefore hold, both upon principle and upon authority, that this testimony of the general reputation and character of the plaintiff as a fighting and quarrelsome man, as admitted on the trial of this case, was competent. The evidence as to whether Bartz knew of these particular former assaults is not as clear as it might be, and yet there is testimony which tends to show that he had heard of this assault upon Slaughterback, and had heard of various assaults.

Objection is made to the charge of the court, or to the refusal to give certain charges requested. They were not asked to be given before argument, and we think the court covered the requests substantially in its charge. The court charged upon the effect of the testimony just referred to, and we think there was no error in what the court said upon that subject. The court limited the effect of that testimony very carefully, and we think strictly within the law; at least the plaintiff in error can not complain.

One other question was objected to. The defendant was asked if he was afraid of plaintiff and he said he was, and he was asked why, and that was objected to, and he said that he had heard of his "licking so many men." That testimony is in line with the testimony already discussed, and we think it was admissible.

It is claimed by the defendant in error that the fact that the verdict was so small can not be a ground of error. We think it can be, although that is not one of the grounds mentioned in the new trial statute; but if the verdict is so small as to be clearly contrary to the weight of the evidence considering the injury sustained, we think that a judgment might be reversed on that ground. If a man had lost an arm or a leg or suffered some great

injury by a malicious attack, and a jury should return a verdict for a half a dollar or a dollar, we think such a verdict would be against the weight of the evidence and contrary to law and it should be set aside; and it is claimed that this verdict is against the weight of the evidence. It is not necessary to discuss the evidence any further; as to who began the assault, the evidence is conflicting, and the question was properly submitted to the jury, and if, as the defendant claims the plaintiff began the assault, then the plaintiff can not complain if he received punishment by way of defense, and the law will not measure very nicely the defense a man makes against one who assaults him. In the struggle it seems that they fell, and according to the testimony of the plaintiff, Bartz struck Henning after he was down; struck him once at least after hostilities had ceased, and when apparently there was no reason for striking him, but it does not appear that any serious injury was received on account of that blow, and the jury returned a nominal sum for damages, as they had a right to do.

There are some things in the testimony of the plaintiff that indicate that this was a fight rather than an assault. The plaintiff testifies that after the trouble had proceeded a while, he said to Bartz, "I have enough, and I want you to get off," and he said Bartz stopped when he said that. Such an expression as that would tend to indicate that Henning did at the time regard it as a fight rather than anything else; that he was in a fight rather than being assaulted maliciously. He said he had enough and asked Bartz to get off, and the testimony shows that immediately after that the battle ended.

We do not feel that we would be justified in reversing this judgment on the ground that the verdict was against the weight of the evidence. After the fight, or the trouble was over, the plaintiff met a witness who testified that he said to him, "I would have whipped him if he had not fouled me," which, if true, has a very strong tendency to show the view that Henning took of the affair at the time. It does not appear that he received any very serious injury; he was bruised and cut some possibly, but was about town as usual, soon after. We have been shown a photograph, which is attached to the bill of exceptions, which shows

plaintiff to be a strong, heavy man, with a facial expression which would indicate that if he was in a fight, he would in all probability try to make his antagonist remember it and endeavor to avoid trouble with him in the future. The evidence tends to show that the plaintiff was a larger man than Bartz and considerably taller, and that was a thing that Bartz had a right to take into consideration. This is one of those cases peculiarly for a jury, and we find no error in the case prejudicial to the plaintiff. The judgment of the court of common pleas will therefore be affirmed.

*N. R. Harrington, W. H. McMillan* and *S. P. Harrison,* for plaintiff.

*James O. Troup* and *Allen J. Seney,* for defendant.